UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD FERGUSON,                              Case No. 12-11702

             Plaintiff,                     Sean F. Cox
v.                                           United States District Judge

CORIZON, *et al.*,                           Michael Hluchaniuk
                                             United States Magistrate Judge

            Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 21)

## I.   PROCEDURAL HISTORY

Plaintiff filed this prisoner civil rights complaint on April 17, 2012.  (Dkt. 1).  Plaintiff claims deliberate indifference to his serious medical needs when he was denied a second surgery on his right hand after an injury and initial surgery. This matter was referred to the undersigned for all pretrial proceedings.  (Dkt. 8). Defendants filed a motion for summary judgment on January 4, 2013.  (Dkt. 21). Plaintiff filed a response on January 24, 2013.  (Dkt. 26).  On February 18, 2013, defendants filed a reply.  (Dkt. 32).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II.     FACTUAL BACKGROUND

Plaintiff alleges that he injured his hand during a routine work assignment, injuring the tendon in the right hand, fifth digit.  (Dkt. No. 1, p. 3, ¶ 9).  Plaintiff's institutional file contains a Prisoner Accident Report showing an injury to his right hand while working as a laborer on September 4, 2008. (Dkt. 21-2).  Plaintiff's medical records show that plaintiff was seen immediately after the injury and had many follow-up visits and treatments afterwards.  (Dkt. 23).  An emergency treatment report dated September 4, 2008 showed he was seen for a possible tendon injury on right hand and that he was unable to flex the fifth finger.  A splint was applied, a request was sent to CMS for follow-up treatment, and he was sent to Duane Waters Health Center for an x-ray.  At that time he had related that he had fallen down the stairs with a mop bucket in his hand and landed so that the last two fingers "got pushed back."  (Dkt. 23-3, Pg ID 395-396, 398).  A CMS authorization request was sent on September 4, 2008 requesting an orthopedic follow up for plaintiff's hand regarding the tendon injury.  (Dkt. 23-3, Pg ID 404).  On September 5, 2008, plaintiff was seen in follow-up to the injury.  The x-ray was negative but a ligament injury was suspected, and he was to continue with the splint while the "407" or request for specialty follow up was pending.  (Dkt. 23-3, Pg ID 391-394).  He was again seen on September 9 and 10, 2008 in follow-up, and the consult for the orthopedic clinic was resubmitted and approved for a visit

with Dr. Ikram on September 17, 2008.  (Dkt. 23-3, Pg ID 385-390).

On September 17, 2008, Dr. Ikram saw plaintiff and recommended referral to the Grand Rapids hand clinic.  Dr. Ikram reported plaintiff was injured when knocked down while on some stairs and had a popping sensation in his right fifth finger.  Dr. Ikram found that plaintiff had limited range of motion in the fifth finger, and indicated plaintiff gave a history of previous fusion of the DIP joints in both the fourth and fifth finger after an injury to the flexor joints in the past.  He could passively flex the PIP joint in the fifth finger.  X-rays showed a fusion of the DIP joints in the fourth and fifth fingers of the right hand.  (Dkt. 23-3, Pg ID 383-384, 397; 401-403).

A request was then submitted for approval of a visit for the Michigan Hand Center in Grand Rapids, which was approved on September 22, 2008.  (Dkt. 23-3, Pg ID 381-382).  Plaintiff was seen by Dr. DeHann on September 29, 2008, who noted the previous history of a DIP fusion of the right finger and small fingers many years ago, and found the ring finger had a stable and fused DIP joint with flexion at the PIP joint.  Dr. DeHann suggested conservative treatment including buddy taping the small finger to the ring finger, and that a tendon transfer or graft would be needed to restore active flexion to the PIP joint. (Dkt. 23-3, Pg ID 400).  Plaintiff had another follow-up with a physician at the facility on October 9, 2008.  (Dkt. 23-3, Pg ID 380).

Plaintiff was transferred to Thumb Correctional Facility on November 4, 2008.  (Dkt. 23-3, Pg ID 378-379).  He was evaluated at Thumb Correctional Facility on November 6, 2008, and his right hand injury was noted.  (Dkt. 23-3, Pg ID 375-377).  A nurse noted Dr. Ikram's orthopedic report and the hand specialist's report to Dr. Burtch on November 12, 2008.  (Dkt. 23-3, Pg ID 375).  Dr. Burtch, on November 12, 2008, requested a referral to a specialist closer than Grand Rapids due to the transfer, and the request was authorized on December 6, 2008.  (Dkt. 23-3, Pg ID 372-373).  Plaintiff kited regarding his right hand on January 6, 2009.  (Dkt. 23-3, Pg ID 371).  He was seen by PA Paula Mass on January 7, 2009.  (Dkt. 23-3, Pg ID 368-370).  Plaintiff saw Dr. Dass, an orthopedic surgeon, on January 21, 2009, who recommended a two stage reconstruction with a Hunter rod, noting the DIP fusion and suggesting there may be a fusion at the PIP joint.  (Dkt. 23-3, Pg ID 399).  Plaintiff was seen again by PA Mass on February 5, 2009 to discuss the orthopedic consult from January 21, 2009, and PA Mass indicated she would initiate the paperwork for surgery.  (Dkt. 23-2, Pg ID 365-366).  The surgical request was approved on February 17, 2009 by Dr. James MacBride, who also approved occupational therapy.  (Dkt. 23-2, Pg ID 360-363).

CMS's contract with the MDOC ended on March 31, 2009.  On April 1, 2009, Prison Health Services, Inc., now Corizon Health Inc., took over the contract

with the MDOC to provide physicians and specialty consult support. (Dkt. 24).

Defendants Dr. Squier and Dr. Edelman were employed by Corizon. (Dkt. 24; 21-

5). Plaintiff had the first stage of the surgery done on April 16, 2009. (Dkt. 23-1,

Pg ID 289-290; Dkt. 23-1, Pg ID 263-264). Dr. Dass, the surgeon, did exploration

of the right small finger regarding the tendons, stage I flexor tendon reconstruction

with the installation of a Hunter rod in the DIP joint, and carpal tunnel release.

(Dkt. 23-1, Pg ID 284; Dkt. 23-2 Pg ID 358-359). Dr. Khan ordered Vicodin for

pain relief and for the prescription to be called to a local pharmacy. (Dkt. 23-1, Pg

ID 291, 292; Dkt. 23-3, Pg ID 405). PA Mass noted the following day that

plaintiff had a follow-up appointment on May 1, 2009, and requested approval of

same. (Dkt. 23-2, Pg ID 360-362). The medical staff also followed up regarding

the surgery at various points. (Dkt. 23-2, Pg ID 325, 330, 335, 338, 341, 343,

349). Dr. Khan saw plaintiff in the chronic care clinic on May 18, 2009. (Dkt. 23-

2, Pg ID 350-353). PA Mass noted on June 1, 2009, that plaintiff needed further

follow-up as additional surgery might not be necessary, and made a follow up

request. (Dkt. 23-1, Pg ID 278; Dkt. 23-2, Pg ID 346-348). Dr. Edelman

suggested an alternate treatment plan of following up on site. (Dkt. 23-1, Pg ID

278; Dkt 21-5). On June 12, 2009, PA Mass noted that plaintiff was not authorized

for follow-up surgery and stated she would schedule him to be seen to evaluate the

status of the tendon repair. (Dkt. 23-2, Pg ID 344-345). PA Mass saw plaintiff

again on June 19, 2009 regarding his fifth digit and noted he insisted something had to be "removed" at the second surgery in August.  PA Mass indicated she would clarify the situation with Dr. Dass' office and resubmit a request.  (Dkt. 23-2, Pg ID 342).  On July 2, 2009, she noted that she initiated a request for physical therapy due to a decreased range of motion after the surgery. (Dkt. 23-2, Pg ID 339-341).  Plaintiff was then referred back to PA Mass after the physical therapy was not authorized.  (Dkt. 23-2, Pg ID 336-337).  Plaintiff also saw Dr. Dass on July 15, 2009.  (Dkt. 23-1, Pg ID 282-283).

    However, a therapy visit was authorized and plaintiff had physical therapy with Thibodeau Physical Therapy on July 13, 2009.  The therapy noted a history of a fused DIP joint on the right hand from a prior wound injury.  The range of motion of the fifth finger MCP was normal for flexion and extension, but the PIP joint active and passive flexion was only ten to fifteen degrees and the DIP joint was fused.  A therapy plan was made at that visit for the period of four weeks. (Exhibit B1, pp. 280-281; 285-288).  However, after the initial evaluation, Dr. Edelman suggested an alternate treatment plan where medical staff would reinforce techniques already learned and to do home exercises for plaintiff's hand. (Dkt. 23-3, Pg ID 279; Dkt. 21-5).

    Dr. Khan saw plaintiff on August 3, 2009, and Dr. Khan tried buddy-splinting the finger along with exercises due to the non-approval of further

physical therapy in favor of reinforcing exercise techniques.  (Dkt. 23-2, Pg ID 334).  PA Mass spoke to the transport officer regarding the plastic tube, i.e., the Hunter Rod, placed during surgery.  (Dkt. 23-3, Pg ID 443).  PA Mass then requested a consult with Dr. Dass regarding possible removal of the tube.  (Dkt. 23-3, Pg ID  331-332).  Dr. Edelman suggested as an alternate treatment plan, that PA Mass speak to Dr. Dass and consult regarding the tube and if it needed to be removed for range of motion ("ROM") reasons.  (Dkt. 23-1, Pg ID 277; Dkt. 21-5).  On October 7, 2009, PA Mass called out plaintiff to briefly check his right fifth digit and called to discuss the case with Dr. Squier at Corizon, who then approved follow-up.  (Dkt. 23-2, Pg ID 327-329).

On November 9, 2009, a nurse noted in the chart that plaintiff was seen off-site for follow-up with the orthopedist, and that a further request for follow-up for the second surgery would be submitted.  (Dkt. 23-2, Pg ID 326).  Plaintiff saw Dr. Dass on November 9, 2009, and Dr. Dass stated a two-step surgery was necessary for flexion at the PIP joint.  He noted that plaintiff has passive MCP and PIP flexion ninety (90°) degrees, and no DIP motion secondary to fusion.  (Dkt. 23-1, Pg ID 272, 275-276).  PA Mass noted on November 12, 2009, that Dr. Dass stated a second stage of surgery was needed for the tendon reconstruction, and she submitted a request for same.  (Dkt. 23-2, Pg ID 322-324).  On November 16, 2009, Dr. Khan saw plaintiff for a Chronic Care Clinic but did not comment on his

finger, and instead took care of cardiovascular issues.  (Dkt. 23-2, Pg ID 319-321).
On November 17, 2009, an order for a follow up with PA Mass regarding the
orthopedic request was entered into the record, and three follow-up entries were
made.  (Dkt. 23-1, Pg ID 315-318).  On November 12, 2009, PA Mass requested
the follow-up surgery.  On November 16, 2009, Dr. Squier requested more
information including the orthopedic operative reports, a current examination for
the hand, and degree of ability to function.  PA Mass responded on November 17,
2009.  On November 23, 2009, Dr. Squier suggested an alternate treatment plan,
noting unless being unable to bend his fingers caused him to be unable to perform
ADLs, further surgery was not medically necessary.  PA Mass further responded,
asking whether the Hunter rod needed to be removed.  (Dkt. 23-1, Pg ID 274).  Dr.
Squier further followed up on December 14, 2009, regarding an alternate treatment
plan, and indicated after discussing the matter with Dr. Edelman, they believed
because Mr. Ferguson's ADLs were not impacted, removal of the Hunter rod was
not a medical necessity.  (Dkt. 23-1, Pg ID 273).

Plaintiff kited on January 13, 2010 regarding his hand surgery.  (Dkt. 23-1,
Pg ID 314).  A nurse responded the following day and scheduled him to be seen.
(Dkt. 23-1, Pg ID 313).  Dr. Khan saw Plaintiff on February 17, 2010, and noted he
was to see Dr. Burtch for re-evaluation of the hand surgery.  (Dkt. 23-1, Pg ID
312).  Dr. Burtch did see Plaintiff on February 22, 2010, noting that he was

Report and Recommendation
Motion for Summary Judgment
*Ferguson v. Corizon*; Case No. 12-11702

requesting a second surgery on his right hand and that he could not fully flex the right little finger.  Dr. Burtch concluded "Corizon has denied request for second surgery in the past.  He has no deficincies [sic] in ADLS so I will not submit a second request." (Dkt. 23-1, Pg ID 309-311).  At that point, plaintiff made no further complaints regarding his hand until June 22, 2010, in a kite, and he was scheduled to be seen.  (Dkt. 23-1, Pg ID 308).  He was seen by PA Kelly Shultman on June 24, 2010, and did not make a complaint about his hand.  (Dkt. 23-1, Pg ID 307).  He was next seen on August 16, 2010, and complained of knee pain, and was given Naprosyn for pain, but did not mention his hand.  (Dkt. 23-1, Pg ID 305-306).  He had an Annual Nurse Well Encounter on August 31, 2010, and did not mention his hand.  (Dkt. 23-1, Pg ID 304).

On September 16, 2010, plaintiff was seen regarding complaints about his hand and made a statement "he is not even going to talk to MP about it because he is just going to sue 'the insurance company.'"  NP Sandra Manssuer noted that plaintiff's right hand pinkie finger is bent at the distal joint and that further surgery had not been approved or scheduled.  She noted: "He was advised that MPs on the site were monitoring his care and that he is doing well with health and function." (Dkt. 23-1, Pg ID 302-303).  Defendants point out that throughout this time period, plaintiff was seen for other medical complaints and did not complain about his hand.  For example, he was seen on August 19, 2011 for a Chronic Care Visit that

covered his hyperlipidemia, hypertension and arthritis.  He complained of joint

pain but not pain in his hand.  (Dkt. 23-1, Pg ID 299-301, 296-298, 293-295).

Dr. Kilaru examined plaintiff's hand on October 25, 2012 and found that he

had active flexion to fifty (50º) degrees, passive flexion to one-hundred (100º)

degrees, and was able to hold, grab, lift, button, comb his hair and do other ADLs.

(Dkt. 23-3, Pg ID 407-410).  Then he noted plaintiff had limited flexion in the fifth

digit of the right hand but that otherwise the hand movements were normal.

Plaintiff was able to make a fist, but noted that the fifth finger is stiff due to the

fusion in the DIP joint; when the hand is closed, the fifth digit points up, but he is

able to oppose the finger with his thumb.  Plaintiff was not limited in any daily

functions.  (Dkt. 23-3, Pg ID 409; Dkt. 21-6).

Dr. Squier reviews specialty requests for Corizon. She believed that the

second step of the surgery should not be approved for several reasons.  (Dkt. 21-4).

The main reason is that plaintiff's distal interphalangeal joint, or DIP joint, at the

tip of the fifth finger was fused.  Therefore, any tendon repair will not restore

function to the last joint.  Further, the use of his hand for activities of daily living,

or ADLs, is not affected by the inability to use the last joint.  He has some

movement in the proximal interphalangeal joint (middle joint) and the

metacarpalphalangeal joint (where the finger joins the hand).  Dr. Squier believed

it was inappropriate to consider the risks associated with surgery, such as

anesthesia, infection, etc., when the surgery would have no actual benefit to plaintiff in terms of restoring function, and would not improve his grip, ADLs, etc. Also, diverting a tendon for that finger would cause weakening elsewhere in the place the tendon was removed.  (Dkt. 21-4).  Defendants argue that Dr. Dass' notes indicated that he "would like" to proceed, not that the surgery was a medical necessity.

Finally, Dr. Squier noted that there is no indication in the records after 2010 that plaintiff was having pain in the fifth finger.  If he was in considerable pain or if the silicon insert was causing pain, decreased function, infection or rejection, she would have approved removal.  However, at this time there is no indication that the silicon insert (tube) is anything other than inert.  She noted that she has had no further requests to consider treatment for plaintiff's hand, and that it is up to the provider to make such requests.  According to Dr. Squier, she has no evidence of a benefit from further surgery and no clear evidence of harm from the silicon remaining in place.  (Dkt. 21-4).

## III.   DISCUSSION

### A.    Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

    B.    <u>The Parties' Arguments</u>

Defendants first argue that plaintiff's claims must fail because there is no "serious medical need" established, as required by applicable case law. According to defendants, plaintiff's complaints ultimately fall in the category of a minor medical need. That is, defendants contend that there is no indication that the failure to restore full movement to the joint in a pinky finger is a serious medical need. There is no indication that the failure to have full movement in the finger is life-threatening or otherwise interferes in the activities of daily living. Defendants point out that plaintiff clearly had some joints fused in a prior incident, and the reconstruction he seeks would only restore movement to the last joint of a pinky finger. Defendant contends that such surgery has been properly denied as not medically necessary and plaintiff can conduct all of his activities of daily living, showing there is no serious medical need.

Defendants also contend that plaintiff cannot establish any deliberate indifference. Rather, defendants contend that the evidence shows that decisions were made regarding plaintiff's care and treatment based on medical knowledge and opinion, not deliberate indifference. Defendants point to case law holding that

even where a private physician recommends a course of treatment, a prison

doctor's use of a different treatment regimen does not amount to deliberate

indifference. *See e.g.*, *Cuco v. Fed. Med. Center-Lexington*, 2006 U.S. Dist.

LEXIS 49711, 108-109 (D. Ky. 2006); *Reid v. Sapp*, 84 Fed.Appx. 550, 552 (6th

Cir. 2003).

Corizon argues that plaintiff has failed to state a claim against it. Corizon

points out that it is not liable under the theory of *respondeat superior*. *Street v.*

*Corrections Corporation of America*, 102 F.3d 810, 817-818 (6th Cir. 1996).

Therefore, even if an individual agent of Corizon did act inappropriately, there is

no liability to Corizon. Corizon also argues that plaintiff has not sufficiently

alleged that Corizon has been deliberately indifferent in any fashion, much less that

there has been a Corizon policy, practice or procedure violated. To state a claim of

deliberate indifference against Corizon, a plaintiff must plead a claim of a policy,

practice, or custom by Corizon that is allegedly unconstitutional, and

that explanation must be specific. According to Corizon, plaintiff has not pled a

specific violation "pursuant to policy, custom and usage" against Corizon. That is,

plaintiff's complaint cites no specific policies or procedures which allegedly

violated plaintiff's civil rights. Even if plaintiff were to respond by identifying

some policy of Corizon which he believes violates his rights, Corizon argues that it

is insufficient for plaintiff to make allegations that Corizon has an unconstitutional

policy, procedure, or protocol.  Rather, plaintiff is required to connect those to

Corizon and demonstrate a pattern and plaintiff has not done so.  Accordingly,

plaintiff has not stated a valid claim against Corizon, because he has failed to

identify any Corizon policy which plaintiff alleges violates plaintiff's rights.

In response, plaintiff first argues that defendants' motion should be denied

because his complaint was verified and they failed to file an answer to the

complaint.  According to plaintiff, this has the legal effect of admitting each

paragraph of the complaint.

Plaintiff also argues that his medical need is, in fact, serious, pointing to case

law holding that a medical need is "serious" if it has been diagnosed by a physician

as mandating treatment.  Plaintiff argues that Dr. Dass repeatedly stated that a

second surgery was required, therefore, his medical need is "serious."  Plaintiff

also argues that his condition is "serious" because it significantly affects his daily

activities.  Specifically, plaintiff contends that his pain and limited flexibility

prevents him from participating in all exercises that require gripping strength, all

recreational sport activities, and even card games.  He also says that the discomfort

and pain disrupts his ability to concentrate on academic studies and this case after

short periods of time and interferes with his ability to type.

Plaintiff also contends that defendants' conduct amounts to deliberate

indifference because they do not dispute that Dr. Dass recommended the second

surgery on two occasions.  Plaintiff maintains that defendants' argument that the second surgery was not a "medical necessity" is a "fallacy."  Plaintiff construes defendants' argument as imposing some kind of "heightened standard" before the refusal of medical treatment rises to the level of deliberate indifference.

Lastly, plaintiff contends that summary judgment against Corizon should be denied because he has not yet had an opportunity to conduct discovery.  According to plaintiff, Corizon's contract to provide healthcare to prisoners includes financial incentives to hold down costs and has no penalty clause if plaintiff's health is compromised based on cost-cutting measures.  Plaintiff contends that Corizon should not be granted summary judgment and plaintiff should be given the opportunity to prove his case against Corizon.

C.    Analysis and Conclusions

1.    Deliberate indifference

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs.  *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective

one.  He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

Even if plaintiff can establish a serious medical need, which the Court assumes for purposes of this motion, he has failed to satisfy the second element of *Wilson*, which requires a showing that defendant acted with deliberate indifference. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of a "malicious" or "sadistic" action.  *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must

allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.  An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983.  *Estelle v. Gamble*, *supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2.  In *Whitley v. Albers*, 475 U.S. 312 (1986), the Court held that "[i]t is obduracy and wantonness, not inadvertence or error in good faith" that violates the Eighth Amendment in "supplying medical needs."  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).  The deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent, ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298), to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed," *Estelle*, 429 U.S. at 104-05.  Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."  *Horn ex rel. Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.), *cert. denied*, 513 U.S. 873 (1994).

In reality, plaintiff's claim and evidence establish nothing more than a mere difference of opinion with the medical providers' assessments and prescribed treatment, which does not establish and Eighth Amendment claim.  *See Thomas v.*

2:12-cv-11702-SFC-MJH Doc # 34 Filed 07/25/13 Pg 19 of 25 Pg ID 559

*Coble*, 55 Fed.Appx. 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly

disagreed over the preferred medication to treat [Plaintiff's] pain. However, this

difference of opinion does not support an Eighth Amendment claim."). This is so

even if the difference of opinion is among medical professionals. As noted in

*Cuco v. Fed. Med Center-Lexington*, 2006 WL 1635668, *33 (E.D. Ky. 2006), the

fact that the plaintiff's personal physician believed that the treatment chosen by

prison medical personnel was not an effective treatment regimen does not matter.

That is, even where a plaintiff's private physician recommends a course of

treatment for the plaintiff's condition, a prison doctor's use of a different treatment

regimen does not amount to deliberate indifference. *Id*. citing, *McCracken v.

Jones*, 562 F.2d 22, 24 (10th Cir. 1977). Here, plaintiff points to Dr. Dass's

recommendation that a second surgery was necessary. However, other medical

professionals determined that surgery was not necessary, would not alleviate

plaintiff's symptoms, and carried further risks that outweighed any potential

benefits. No matter how the evidence is parsed, at its core, this case merely

presents differences among medical opinions, which does not give rise to an Eighth

Amendment deliberate indifference claim. The undersigned also concludes that,

given the extensive treatment plaintiff received, and his failure to offer any

evidence that it was "so woefully inadequate as to amount to no treatment at all,"

plaintiff cannot satisfy the second prong of *Wilson*.

Report and Recommendation
Motion for Summary Judgment
*Ferguson v. Corizon*; Case No. 12-11702

19

2.      Claim against Corizon

Because Corizon was providing medical services to inmates under contract with MDOC, it may properly be sued under § 1983.  *See Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993).  As defendants correctly argue, Corizon cannot be held liable under § 1983 on a supervisory liability theory.  The Supreme Court disallowed § 1983 *respondeat superior* liability in *Monell v. Department of Social Services,* 436 U.S. 658 (1978), which held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.  Instead, a government body—or a nongovernmental entity such as Corizon, in this case—can be found liable under § 1983 where a constitutional wrong arises from execution of that entity's policies or customs. *Id.* at 694.

For his claim to succeed, plaintiff must: (1) identify a policy or custom; (2) connect the policy or custom to Corizon; and (3) show that executing that policy amounted to deliberate indifference to plaintiff's injury. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (holding that "to satisfy the Monell requirements a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy") (internal quotation marks omitted).  A "custom" need not be formally approved or officially adopted by the entity, however.  As the *Monell* Court noted: "Although not authorized by written law, such practices of state officials could

well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68 (1970) (quotation marks omitted).

Federal district courts in Michigan have expressly found that a complaint identifying a policy of denying care to save costs may be sufficient to state a *Monell* claim.  *See e.g.*, *Garrison v. Davis*, 2009 WL 1508293, at *3 (E.D. Mich. 2009) (denying motion to dismiss where plaintiff alleged that CMS acted pursuant to an "unwritten policy and or pattern to deny necessary and effective medication to the Plaintiff in order to save money for profit" and that a nurse told plaintiff that certain medications are not prescribed for prisoners because they are not authorized because they are too expensive); *Reeves v. Corr. Med. Services*, 2009 WL 3876292, at *7 (E.D. Mich. 2009) (plaintiff sufficiently pleaded that defendant had a cost-cutting policy, and that this policy resulted in the denial of his doctor's request for an MRI); *Davis v. Caruso*, 2009 WL 877964, at *14 (E.D. Mich. 2009) (denying CMS's motion to dismiss where the plaintiff alleged that CMS had a policy of denying care in order to save costs).

Unlike the cases noted above, this case has reached the summary judgment stage.  To avoid summary judgment because he has admittedly offered no evidence to support this claim, plaintiff seeks leave to conduct discovery, presumably under Rule 56(d).  Rule 56(d) provides in pertinent part that "[i]f a nonmovant shows by

affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d). The burden is on the party seeking additional discovery to show why such discovery is necessary. *Summers v. Lets*, 368 F.3d 881, 887 (6th Cir. 2004), citing *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003). The party "must state with 'some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment.'" *Id.*, quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996). Rule 56(d) is not intended to shield individuals who have been dilatory in conducting discovery. *Steele v. City of Cleveland*, 375 Fed.Appx. 536, 541 n. 4 (6th Cir. 2010) (construing former subdivision (f) and citing *Mallory v. Noble Corr. Inst.*, 45 Fed.Appx. 463, 469 (6th Cir. 2002)). Thus, in addition to requiring the filing of an affidavit, Rule 56(d) requires the party seeking a continuance to make a showing as to why he did not previously conduct the necessary discovery. *Id.*, citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). Plaintiff offers no affidavit in support of his request, he identifies no reason why he did not seek leave from the Court to conduct discovery or otherwise attempt to obtain discovery from Corizon since this motion was filed over six months ago. For these reasons,

the undersigned concludes that plaintiff's belated and half-hearted request for discovery should be denied. As set forth above, plaintiff has conceded that he has no evidence to support this claim. Therefore, Corizon's motion for summary judgment should be granted.

### 3.    Plaintiff's verified complaint theory

Defendants correctly point out that they are permitted under the Federal Rules of Civil Procedure to file a motion for summary judgment in lieu of answering the complaint. Contrary to plaintiff's contentions, there is nothing inappropriate about filing a motion for summary judgment instead of answering the complaint. Rule 56 authorizes the filing of summary judgments "at any time until 30 days after the close of all discovery." Fed.R.Civ.P. 56(b). "Courts and commentators have acknowledged that no answer [to the complaint] need be filed before a defendant's motion for summary judgment may be entertained." *INVST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 403 (6th Cir.1987) (citations omitted). Thus, the undersigned finds that plaintiff's argument does not preclude the granting of summary judgment in defendants' favor.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 25, 2013                     s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on July 25, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kimberley A. Koester and Ronald W. Chapman, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): Donald Ferguson, ID# 122782, THUMB CORRECTIONAL FACILITY, 3225 John Conley Drive, Lapeer, MI 48446.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Motion for Summary Judgment
*Ferguson v. Corizon*; Case No. 12-11702